UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK          CIVIL ACTION NO:_____

_____
                                              )
KATHY NICKERSON,                              )
                                              )
                    Plaintiff                 )
                                              )
            v.                                )
                                              )
PAR ENVIRONMENTAL CORPORATION                 )
and PATRICK MAHONEY                           )
                    Defendants                )
_____ )

## COMPLAINT AND JURY DEMAND

### Parties

1.      The Plaintiff, Kathy Nickerson ("Ms. Nickerson" or "Plaintiff"), is a female

resident of the State of New York, residing at 140 Union Street, Montgomery, New York, 12549.

2.      Defendant, Par Environmental Corporation ("Par" or the "Company") is

incorporated under New York law.  Par's principal office is located at 313 Spook Rock Road,

Suffern, New York, 10901.

3.      Defendant, Patrick Mahoney ("Mr. Mahoney") is an adult male.  At all relevant

times, Mr. Mahoney was Par's President.  Mr. Mahoney is named in both his individual and

official capacities.

### Jurisdiction and Venue

4.      The court has subject matter jurisdiction under 28 U.S.C. §1331 because Ms.

Nickerson has brought a claim pursuant to the Americans with Disabilities Act ("ADA") 42

U.S.C. §§ 1201 et seq. and the Family and Medical Leave Act ("FMLA") 29 U.S.C. §2615.  The

court may exercise supplemental jurisdiction over Ms. Nickerson's state law claims. 28 U.S.C. §1367.

5.     Venue is appropriate in the Southern District of New York as Defendant Par's principal place of business is located in the Southern District of New York and/or the acts or omissions giving rise to the claims in this Complaint occurred in the Southern District of New York.

6.     Venue is also appropriate in the Southern District of New York because Ms. Nickerson resided in Montgomery, New York, which is located in the Southern District of New York. Ms. Nickerson worked in Suffern, New York, which is also located in the Southern District of New York. The Company's principal place of business was also located in the Southern District of New York.

7.     This court has jurisdiction over Defendant Par because Par's principal place of business is located in Suffern, New York, and because Par has engaged in and transacted business in the State of New York, including by managing and/or operating a business in New York and/or employing the Plaintiff in New York. Indeed, the Plaintiff was employed by Par in the State of New York, was managed by Par in the State of New York, and was terminated by Par in the State of New York.

8.     This court has jurisdiction over Mr. Mahoney (in both his individual and official capacity) because he availed himself of New York law by transacting business, including being employed by Par and/or managing employees in the State of New York. Mr. Mahoney served in a supervisory capacity over Ms. Nickerson, provided directives, managed Ms. Nickerson's employment, and terminated her employment in the State of New York.

9.     The court thus has jurisdiction over the Company and Mr. Mahoney (together and individually the "Defendants") including, but not limited to, because they purposefully availed themselves of New York law by operating a business in New York, transacting business in New York, and employing employees (including, during the times relevant to this Complaint, Ms. Nickerson herself) in New York.

### Statement of Facts

10.     In or around January 2017, Ms. Nickerson was hired by Par as a Contract Compliance Administrator based at a worksite in Suffern, NY.

11.     At all relevant times, the Company employed 15 or more employees during the preceding 12 months.

12.     As such, at all relevant times, the Company was (and still is) an employer under Federal and state anti-discrimination laws.

13.     At all relevant times, the Company employed 50 or more employees within a 75-mile radius of 313 Spook Rock Road, Suffern, NY 10901, which is the worksite where Ms. Nickerson worked and was based.

14.     As such, at all relevant times, the Company was (and still is) an employer under the Family and Medical Leave Act (FMLA), as well as state and federal anti-discrimination laws.

15.     Likewise, at all relevant times (after January 2018), Ms. Nickerson was an employee eligible for leave under the FMLA.

16.     At all relevant times, Ms. Nickerson was a qualified employee and performed her work satisfactorily.

17.     At all relevant times, Mr. Mahoney was Ms. Nickerson's direct supervisor at Par.

18.     At all relevant times, Ellen Moran ("Ms. Moran"), the Office Manager, also supervised Ms. Nickerson.

19.     Upon information and belief, Mr. Mahoney and Ms. Moran were non-disabled individuals.

20.     Furthermore, Ms. Nickerson was trained by Ms. Moran on aspects of her employment including, but not limited to, remote depositing of funds to financial accounts, reporting related to financial accounts, and collections of funds.

21.     At some point during Ms. Nickerson's employment, another employee was hired by the name of Idel Riggio ("Ms. Riggio").  Ms. Riggio ultimately worked alongside Ms. Nickerson.

22.     During Ms. Nickerson's employment, supervisors and employees, including Ms. Moran, on several occasions congratulated her on her strong performance, including the volume of cash flow that she secured and the excellent work that she produced for Par.

23.     Mr. Mahoney, on another occasion, gave Ms. Nickerson a gift card as a recognition for Ms. Nickerson's hard work and strong performance.

24.     Furthermore, in or around February 2018, Ms. Nickerson received a positive annual review for her strong performance.

25.     Additionally, Ms. Nickerson was told that her hard work and the fact that she took on the extra task of billing, which she was not originally hired to do, was greatly appreciated.

26.     In or around February 2018, Ms. Nickerson experienced some issues in her personal relationship that prompted her to experience anxiety and other various symptoms.

27.     In or around July 2018, Ms. Nickerson was diagnosed with achalasia.  Ms.

Nickerson's achalasia condition is a rare physical impairment which makes it difficult for food and/or liquid to pass into her stomach.  This arises and/or occurs as a result of certain nerves in her esophagus being damaged, thus hindering her intake of food and/or liquid as mentioned above.

28.     There is no cure for achalasia.  But symptoms can usually be managed with therapy (i.e., therapeutic endoscopic treatment) or surgery.

29.     Ms. Nickerson's achalasia is a physical impairment that substantially limits one or more of her major life activities, including, but not limited to, her ability to eat, digest food, and drink.  Ms. Nickerson's achalasia is a physical impairment that also substantially impairs one or more of her major bodily functions, including, but not limited to, her gastrointestinal function.  As such, Ms. Nickerson is disabled under the ADA and the New York Human Rights Law, Executive Law Article 15, Section 296 ("NYSHRL") based on this condition.

30.     Ms. Nickerson disclosed her disability to the Company, including, but not limited to, Mr. Mahoney and Ms. Moran.

31.     In or around August 2018, Ms. Nickerson began experiencing symptoms of, and was officially diagnosed with, fibromyalgia, chronic pain syndrome, and migraine with aura.  Ms. Nickerson's fibromyalgia, chronic pain syndrome, and migraine with aura (collectively and each separately) are physical impairments that substantially limit one or more of her major life activities, including, but not limited to, sleeping, walking, concentration, emotional regulation (including causing symptoms of anxiety and depression), and engaging in physical activity without persistent/severe pain.  Ms. Nickerson's fibromyalgia, chronic pain syndrome, and migraine with aura

(both collectively and each separately) are also physical impairments that substantially impair one or more of her major bodily functions, including, but not limited to, her neurological, nerve, skeletal, muscular, and menstrual functions.  As such, Ms. Nickerson is further disabled under the ADA and NYSHRL based on these conditions.

32.     Ms. Nickerson was also diagnosed with intervertebral displacement of the lumbar region of her back.  Ms. Nickerson's intervertebral displacement is a physical impairment that substantially limits one or more of her major life activities, including, but not limited to, walking, sitting for long periods of time, and engaging in physical activity without persistent/severe pain.  Ms. Nickerson's intervertebral displacement is also a physical impairment that substantially impairs one or more of her major bodily functions, including, but not limited to, her skeletal and muscular functions.  As such, Ms. Nickerson is further disabled under the ADA and NYSHRL based on this condition.

33.     Ms. Nickerson again disclosed her fibromyalgia, chronic pain syndrome, migraine with aura, and intervertebral displacement disabilities to both Mr. Mahoney and Ms. Moran.

34.     In disclosing her disabilities to Mr. Mahoney and Ms. Moran, Ms. Nickerson also made reasonable accommodation requests and advised them that she needed occasional time off from work to attend various disability-related medical appointments, as well as time off from work to recover from flare ups of her disability symptoms.

35.     The Company seemingly granted these reasonable accommodations. Importantly, these reasonable accommodation requests were not an undue burden on the Company.

36.     Indeed, at all relevant times, Ms. Nickerson was still working as much as or more than her non-disabled colleagues.

37.     Furthermore, in late 2018, Ms. Nickerson began to experience peripheral neuropathy as a result of a herniated and/or bulging disk in the L5 region of her spine, as well as due to her severe fibromyalgia.

38.     This was a result of several symptoms associated with her fibromyalgia disability, such as muscle spasms, cramping, numbness in her legs, and even potentially paralysis.

39.     Ms. Nickerson's peripheral neuropathy is a physical impairment that substantially limits one or more of her major life activities including, but not limited to, walking, driving, standing, and concentrating.  Ms. Nickerson's peripheral neuropathy is also a physical impairment that substantially impairs one or more of her major bodily functions, including, but not limited to, her nervous system.  As such, Ms. Nickerson is further disabled under the ADA and NYSHRL based on this condition.

40.     Ms. Nickerson disclosed her peripheral neuropathy-related disability to the Company, including to Mr. Mahoney and Ms. Moran.

41.     A symptom associated with Ms. Nickerson's peripheral neuropathy disability involved her frequently losing sensation in her legs, which in turn prevented her from being able to drive during flare ups of her disabilities.

42.     In or around this time, Ms. Nickerson began to experience outward manifestations of her disabilities at work and these physical manifestations were noticeable to other employees, including Mr. Mahoney and Ms. Moran.  It was clear that other employees, including Mr. Mahoney and Ms. Moran, regarded Ms. Nickerson as being disabled.

43.    Ms. Nickerson requested a reasonable accommodation from Ms. Moran and the Company of being allowed to use a higher desk and chair, which would assist her in performing her essential job functions as it would permit better circulation and limit the pain, numbness, and lack of muscle control associated with her disabilities.

44.    This reasonable accommodation request was not an undue burden on the Company.

45.    Nonetheless, Ms. Moran denied Ms. Nickerson's reasonable accommodation request and told Ms. Nickerson to not make the request to Mr. Mahoney either.

46.    Furthermore, as a result of the same above-mentioned disabilities, Ms. Nickerson also requested an additional reasonable accommodation of being able to work from home on days where she experienced a disability-related symptom flare-up and accordingly was not well enough to travel into work.

47.    Ms. Nickerson's initial request was to modify her work schedule and work from home for approximately two days a week in order to address her disabilities and attend various doctors' appointments, although she was at all times willing to discuss modifying the request if the Company believed that was an undue burden.

48.    Notably, Ms. Nickerson's job responsibilities could be completed from home.

49.    Indeed, other non-disabled employees were sometimes allowed to work from home.

50.    The Company begrudgingly granted Ms. Nickerson's reasonable accommodation request of being permitted to work from home when needed.  Notably, this reasonable accommodation request was not an undue burden on the Company.

51.    Beyond that, the Company did not enter into any meaningful interactive

dialogue with Ms. Nickerson regarding her above-mentioned disabilities or accommodation requests.

52.     Indeed, the Company and Mr. Mahoney seemed to take issue with Ms. Nickerson's request for, and utilization of, reasonable disability-related accommodations.

53.     For example, Mr. Mahoney and Ms. Moran appeared annoyed when Ms. Nickerson utilized the reasonable accommodations that were previously granted to her.

54.     In or around this time, Karen Csanadi ("Ms. Csanadi"), a billing employee, would mock Ms. Nickerson's use of handicap parking at work, and would snidely tell Ms. Nickerson that she should not bother to park in a handicap parking spot because it was just as far from the door as non-handicapped parking spots.

55.     Ms. Moran would laugh at Ms. Csanadi's comments.

56.     Ms. Nickerson conveyed protected concerns to Ms. Moran that she wanted the harassing comments to stop, but Ms. Csanadi continued to make remarks about Ms. Nickerson's disabilities.

57.     In or around 2019, Ms. Nickerson requested to Ms. Moran the reasonable accommodation of taking brief breaks as needed at work to manage her disability-related pain.

58.     Notably, Ms. Nickerson was criticized by Ms. Moran for the length of time of her breaks, which were in fact brief.  Ms. Moran thus put pressure on Ms. Nickerson to not utilize her requested accommodations, and made it clear to her that she (Ms. Nickerson) would face retaliatory animus if she did utilize disability-related accommodations.

59.     Ms. Moran would not likewise criticize non-disabled employees for the length or number of their breaks, which were often the same or greater amounts of time than what

Ms. Nickerson took.

60.     In or around early July 2019, Ms. Nickerson disclosed to the Company including, but not limited to, Mr. Mahoney, her need for surgery to address her disabilities, as well as her need to attend doctor's appointments.

61.     Ms. Nickerson disclosed that she required a laparoscopic surgery on her esophagus to help manage her disability symptoms and the effects of her disability on her gastrointestinal function.  That surgery was scheduled for November 6, 2019.

62.     As a result, Ms. Nickerson made a reasonable accommodation request to be allowed a limited leave of absence to attend and recover from disability-related surgery scheduled for November 6, 2019.

63.     Ms. Nickerson also requested that she be allowed disability-related time off from work to recover after her November 2019 surgery and to work from home for an approximately 2-week recovery period while her recovery continued after the surgery.

64.     These reasonable accommodations were not an undue burden on the Company, including because Ms. Nickerson's job was almost entirely computer based and completely capable of being performed from home.

65.     Additionally, by this time (July 2019), Ms. Nickerson had been an employee at the Company for at least 12 months and had worked in excess of 1,250 hours during the preceding 12-month period.  As such, Ms. Nickerson was eligible for FMLA leave.

66.     Accordingly, Ms. Nickerson requested leaves of absence related to the disability-related surgery and recovery, which constituted requests for both FMLA-covered leave and disability-related accommodations.

67.     As such, the leaves that Ms. Nickerson requested were protected under the FMLA,

and also constituted reasonable accommodation for her disabilities.

68.    Importantly, at all relevant times, Ms. Nickerson was able to perform all of her essential job functions either with or without reasonable accommodations.

69.    After disclosing the need for accommodations for her disabilities, Ms. Nickerson began to experience an increasingly hostile work environment.

70.    For example, Ms. Nickerson noticed that non-disabled employees, like Ms. Riggio, were treated more favorable than she herself (Ms. Nickerson), the disabled employee.

71.    Throughout the rest of the summer of 2019 and into the fall of 2019, Ms. Nickerson continued to periodically remind the Company of her need for disability-related leave.

72.    In or around September 2019, Ms. Nickerson requested the reasonable accommodation of taking time off from work to attend various doctor's appointments and/or to recover from flareups of her disabilities.

73.    On or around September 17, 2019, Ms. Nickerson experienced a flare up of her disabilities, and required medical treatment at the hospital.

74.    Ms. Nickerson requested the reasonable accommodation from Mr. Mahoney and Ms. Moran of being allowed to take disability-related time off from work for hospitalization and treatment of her disabilities.

75.    This request for reasonable accommodation also constituted a request for FMLA leave.

76.    Notably, at this time, Ms. Nickerson had not exhausted her FMLA leave and had sufficient FMLA time available to cover the full period of her

requested leave.

77.     Mr. Mahoney became critical of Ms. Nickerson and her requests for FMLA leave and/or other disability-related accommodations.

78.     This criticism of Ms. Nickerson for utilizing reasonable accommodations for her disabilities constituted a constructive denial of her requests for reasonable accommodations, as well as interference with Ms. Nickerson's ability to utilize FMLA leave free from retaliation and interference by her employer.  Indeed, Ms. Nickerson felt pressured to cancel, reduce, or otherwise limit her use of FMLA leave and/or reasonable accommodations.

79.     In or around this time, Ms. Moran and Ms. Csanadi would make disparaging comments about Ms. Nickerson's physical appearance, such as by saying that Ms. Moran and Ms. Csanadi believed Ms. Nickerson looked terrible, seemingly because of Ms. Nickerson's disabilities.

80.     Ms. Nickerson conveyed protected concerns that the comments were unwelcomed, but Ms. Moran ignored Ms. Nickerson's concerns.

81.     In or around October 2019, Ms. Csanadi snidely remarked in an annoyed tone that Ms. Nickerson was (allegedly) never in the office (which was not true), clearly referring to Ms. Nickerson's use of reasonable disability-related accommodations either through short leaves or working from home.

82.     Upon information and belief, Ms. Csanadi knew that Ms. Nickerson was disabled and had to take time off and/or work from home because of her disabilities. Accordingly, Ms. Csanadi's comments constituted knowing harassment of Ms. Nickerson based on her disabilities.

83.     Ms. Nickerson conveyed protected concerns to Ms. Moran regarding Ms. Csanadi's harassing comment, which criticized Ms. Nickerson's use of her disability-related reasonable accommodations.

84.     Seemingly in retaliation for voicing requests for reasonable accommodations and/or disability-related protected concerns, the Company began to shift several of Ms. Nickerson's responsibilities to other non-disabled workers.

85.     Notably, non-disabled employees were not treated as critically, nor was their work being taken away from them.

86.     During the autumn of 2019, Ms. Nickerson periodically reminded the Company on a few occasions of her need to take disability-related leave (which was also leave protected under the FMLA) related to her November 2019 surgery.

87.     On or around November 1, 2019, Mr. Mahoney called Ms. Nickerson to his office for a meeting with himself (Mr. Mahoney) and Ben Sanchez ("Mr. Sanchez"), the Director of Operations.

88.     Notably, this November 1, 2019 meeting took place only a few days before Ms. Nickerson was scheduled to commence her FMLA leave for her disability-related surgery, which Ms. Nickerson had previously requested disability-related time off for, and which the Company had seemingly approved in or around July 2019.

89.     Indeed, at the time of the November 1, 2019 meeting, Mr. Mahoney and the Company knew that Ms. Nickerson was scheduled to commence an FMLA leave (which also constituted a disability-related accommodation) in the near future to undergo and recover from a disability-related surgery.

90.     In the November 1, 2019 meeting, Mr. Mahoney informed Ms. Nickerson that

she was terminated.

91.    Mr. Mahoney asserted that the Company was eliminating Ms. Nickerson's

position and was distributing her tasks amongst other employees.

92.    Ms. Nickerson raised protected concerns as to why her position, that of a

disabled employee, was suddenly being eliminated just before she was scheduled to take a

leave for surgery, especially when she (Ms. Nickerson) was still managing approximately the

same amount of work that she had managed in the past several months.  Mr. Mahoney and

Mr. Sanchez did not provide a response.

93.    As such, Ms. Nickerson was terminated on November 1, 2019, less than a

week before her scheduled disability-related laparoscopic surgery, which she had disclosed

to the Company many times as part of her repeated requests for accommodations (including

requests for leave protected under the FMLA).

94.    Ms. Nickerson's termination shortly before her scheduled surgery, which the

Company was aware of, functioned as a denial of her request for reasonable

accommodations for disability-related leave and recovery time for the November 2019

surgery (as well as a denial and/or interference of her request for FMLA leave).

95.    As scheduled, Ms. Nickerson underwent her medically necessary disability-

related surgery on November 6, 2019 and ultimately recovered.

96.    Notably, if the Company had deemed it to be an undue burden for Ms. Nickerson

to work from home for two weeks following her surgery (it was not), the Company should have

engaged in an interactive dialogue with Ms. Nickerson regarding alternative accommodations

(such as taking a longer leave of absence, which would be protected leave under the FMLA) or

other accommodations to make it more efficient or effective for Ms. Nickerson to work from

home (such as a modified work schedule).

97.     Notably, the Defendants failed to engage in an interactive dialogue with Ms. Nickerson regarding her accommodation requests and/or reasonable alternative accommodations.

98.     Upon information and belief, Ms. Nickerson's position was not truly eliminated. Indeed, she was replaced by the non-disabled Ms. Riggio.

99.     In a Position Statement submitted to the New York State Division of Human Rights by Defendant Par during the administrative proceedings in this case, Par admits that Ms. Riggio took over Ms. Nickerson's job duties, thus confirming that Ms. Nickerson's position was not truly eliminated (and that the Company's claim to have eliminated the position constituted a pretextual excuse for the improper termination of Ms. Nickerson).

100.    Furthermore, even if the Company needed to eliminate a position (which it did not), there were other less qualified and less senior non-disabled individuals whose positions should have been eliminated instead of Ms. Nickerson's position.

101.    For example, if the Company needed to make cuts to save on costs, it could have instead terminated Ms. Riggio, a non-disabled individual with less seniority and experience than Ms. Nickerson.

102.    In July 2020, Ms. Nickerson timely filed a Charge of Discrimination with the New York State Division of Human Rights ("NYSDHR") and cross filed this charge with the United States Equal Employment Opportunity Commission ("EEOC").

103.    On October 7, 2020, Ms. Nickerson requested an administrative convenience dismissal from the NYSDHR.

104.    On October 7, 2020, Ms. Nickerson notified the EEOC of her intent to file a complaint in court and accordingly, requested that the EEOC provide a right to sue letter and

permit Ms. Nickerson to file in court.

105.    On December 31, 2020, Ms. Nickerson received a notice of administrative

convenience dismissal from the NYSDHR.

106.    On January 4, 2020, Ms. Nickerson received a right to sue letter from the EEOC.

107.    This Complaint is timely filed in compliance with the timeframe of relevant

laws and requirements.


## COUNT I

**(Disability Discrimination and Failure to Accommodate in Violation of the New York State Human Rights Law, Executive Article 15, Section 296)**

**Ms. Nickerson v. All Defendants**

108.    Ms. Nickerson incorporates all paragraphs above and below as if set forth fully

herein.

109.    The Company is an employer under the definition of the New York State Human

Rights Law because, at all relevant times, it employed four or more persons.

110.    Ms. Nickerson suffers (and at all relevant times suffered) from disabilities,

including, achalasia, fibromyalgia, chronic pain syndrome, migraine with aura, intervertebral

displacement of the lumbar region of her back, and peripheral neuropathy.  Each of these

disabilities, both individually and collectively, are impairments that substantially limit one or

more of her major life activities, including, but not limited to, eating, drinking, digesting food,

sleeping, walking, concentration, emotional regulation (including causing symptoms of anxiety

and depression), driving, and engaging in physical activity without persistent/severe pain.

111.    Ms. Nickerson's achalasia, fibromyalgia, chronic pain syndrome, migraine with

aura, intervertebral displacement of the lumbar region of her back, and peripheral neuropathy

(both individually and collectively) are also physical impairments that substantially impair one or more of her major bodily functions, including, but not limited to, her gastrointestinal, neurological, nervous system, menstrual, skeletal, and muscular functions.  Accordingly, Ms. Nickerson is (and at all relevant times was) disabled under the New York State Human Rights Law based on these conditions.

112.    At all relevant times, Ms. Nickerson was a qualified employee and was capable of performing the essential functions of her job with or without one or more reasonable accommodations.

113.    Ms. Nickerson disclosed her disabilities to the Defendants, and/or the Defendants were aware of Ms. Nickerson's disabilities, and/or the Defendants regarded Ms. Nickerson as disabled.

114.    Ms. Nickerson requested and/or utilized disability-related reasonable accommodations that would have assisted her in performing the essential functions of her job. These requested reasonable accommodations included, but were not limited to, being allowed to use a higher desk and chair, periodically working from home, limited leaves of absence to attend and recover from surgery, being allowed to work from home for an approximately 2-week recovery period after her November 2019 surgery, and taking disability-related leave for recovery from flare-ups of her disabilities' symptoms.

115.    The disability-related accommodations requested by Ms. Nickerson did not pose an undue burden on the Defendants.

116.    The Defendants failed to engage in an interactive dialogue and unlawfully denied one or more of Ms. Nickerson's accommodation requests, including, but not limited to, being allowed to use a higher desk and chair, and by criticizing Ms. Nickerson for utilizing reasonable

accommodations for her disabilities in a manner that constituted a constructive denial, and terminating her with the seeming purpose of preventing her from utilizing the reasonable accommodation of a disability-related temporary leave of absence and to work from home following her November 6, 2019 surgery.

117.    The Defendants discriminated against Ms. Nickerson due to her disabilities by subjecting Ms. Nickerson to adverse actions, including, but not limited to, subjecting Ms. Nickerson to a harassing and otherwise hostile work environment, holding her to a higher standard than non-disabled employees, taking away her job duties, and/or terminating Ms. Nickerson's employment.

118.    Non-disabled employees of the Company were treated more favorably than Ms. Nickerson, including through not being improperly harassed, not being subjected to a hostile work environment, not having their job duties taken away, and/or not being terminated.

119.    Upon information and belief, Mr. Mahoney made, or was involved in making, the decision to terminate Ms. Nickerson, and was the individual who did in fact terminate Ms. Nickerson.

120.    Upon information and belief, the Company replaced Ms. Nickerson with a lesser or similarly qualified, non-disabled employee.

121.    Mr. Mahoney discharged, expelled, barred, and/or discriminated against Ms. Nickerson in her compensation, conditions, and/or privileges of employment based on rights afforded to Ms. Nickerson under the New York State Human Rights Law.

122.    Mr. Mahoney aided, abetted, incited, coerced, and/or compelled the Company's discriminatory conduct, including, but not limited to, by providing or attempting to provide

assistance to individuals participating in conduct forbidden under the New York State Human Rights Law.

123.    Defendants' actions were willful, wanton, reckless, and/or involved a conscious disregard of the rights of Ms. Nickerson and/or conduct so reckless to amount to such disregard.

124.    As a direct and proximate result of the Defendants' violations of the New York State Human Rights Law, the Plaintiff has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, other monetary harms, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

125.    Ms. Nickerson seeks all damages to which she is entitled, including, but not limited to, lost compensation and benefits (including back pay and front pay), lost benefits, reduced earning capacity, other financial damages, emotional distress damages, uncapped compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), injury to reputation, punitive damages,  interest, attorney's fees, and costs.

## COUNT II

### (Disability Discrimination and Failure to Accommodate in Violation of the Americans with Disabilities Act, 42 U.S.C. §§12101, et seq.)

### Ms. Nickerson v. The Company

126.     Ms. Nickerson incorporates all paragraphs above and below as if set forth fully herein.

127.    During all relevant times the Company was an employer under the Americans with Disabilities Act, 42 U.S.C. §§12101, et. seq. (hereinafter the "ADA"), because it employed more than 15 persons for 20 or more calendar weeks within the previous 12-month period.

128.    At all relevant times, Ms. Nickerson was a qualified employee and was capable of performing the essential functions of her job with or without one or more reasonable accommodations.

129.    Ms. Nickerson suffers (and at all relevant times suffered) from disabilities, including, achalasia, fibromyalgia, chronic pain syndrome, migraine with aura, intervertebral displacement of the lumbar region of her back, and peripheral neuropathy.  Each of these disabilities, both individually and collectively, are impairments that substantially limit one or more of her major life activities, including, but not limited to, eating, drinking, digesting food, sleeping, walking, concentration, emotional regulation (including causing symptoms of anxiety and depression), driving, and engaging in physical activity without persistent/severe pain.

130.    Ms. Nickerson's achalasia, fibromyalgia, chronic pain syndrome, migraine with aura, intervertebral displacement of the lumbar region of her back, and peripheral neuropathy (both individually and collectively) are also physical impairments that substantially impair one or more of her major bodily functions, including, but not limited to, her gastrointestinal, neurological, nervous system, menstrual, skeletal, and muscular functions.  Accordingly, Ms. Nickerson is (and at all relevant times was) disabled under the ADA based on these conditions.

131.    Ms. Nickerson disclosed her disabilities to the Defendants, and/or the Defendants were aware of Ms. Nickerson's disabilities, and/or the Defendants regarded Ms. Nickerson as disabled.

132.    Ms. Nickerson requested and/or utilized disability-related reasonable accommodations that would have assisted her in performing the essential functions of her job. These requested reasonable accommodations included, but were not limited to, being allowed to use a higher desk and chair, periodically working from home, limited leaves of absence to attend

and recover from surgery, being allowed to work from home for an approximately 2-week recovery period after her November 2019 surgery, and taking disability-related leave for recovery from flare-ups of her disabilities' symptoms.

133.     The disability-related accommodations requested by Ms. Nickerson did not pose an undue burden on the Defendants.

134.     The Company failed to engage in an interactive dialogue and unlawfully denied one or more of Ms. Nickerson's accommodation requests, including, but not limited to, being allowed to use a higher desk and chair, and by criticizing Ms. Nickerson for utilizing reasonable accommodations for her disabilities in a manner that constituted a constructive denial, and terminating her before she could utilize the reasonable accommodation of a disability-related temporary leave of absence and to work from home following her November 6, 2019 surgery.

135.     The Company discriminated against Ms. Nickerson due to her disabilities by subjecting Ms. Nickerson to adverse actions, including, but not limited to, subjecting Ms. Nickerson to a harassing and otherwise hostile work environment, holding her to a higher standard than non-disabled employees, taking away her job duties, and/or terminating Ms. Nickerson's employment.

136.     Non-disabled employees of the Company were treated more favorably than Ms. Nickerson, including through not being improperly harassed, not subjected to a hostile work environment, not having their job duties taken away, and/or not terminated.

137.     Upon information and belief, the Company replaced Ms. Nickerson with a lesser or similarly qualified, non-disabled employee.

138.     The Company acted with malice and/or with reckless indifference to the federally protected rights of Ms. Nickerson.

139.    As a direct and proximate result of the Company's violation of the ADA, Ms. Nickerson has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, other monetary harms, loss of earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

140.    Ms. Nickerson seeks all damages to which she is entitled, including, but not limited to lost compensation and benefits (including, but not limited to, back pay and front pay), other monetary damages, compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), injury to reputation, diminished earning capacity, punitive damages, interest, attorney's fees, and costs.

## COUNT III

## (Interference and Retaliation for Exercising Rights under the Family Medical Leave Act – 29 U.S.C. §2615)

## Ms. Nickerson v. All Defendants

141.    Ms. Nickerson incorporates all paragraphs above and below as if set forth fully herein.

142.    During all relevant times, the Company was engaged in an industry affecting commerce and employed 50 or more employees for 20 or more calendar work weeks in each current and/or preceding calendar year.

143.    As such, at all relevant times, the Company was an employer under the FMLA.

144.    At all relevant times, the Company collectively employed 50 or more employees within 75 miles of Ms. Nickerson's worksite.

145.    At all relevant times, Ms. Nickerson had worked for the Company for 12 or more months and had worked in excess of 1,250 hours within the past 12-month period.

146.    As such, Ms. Nickerson was an eligible employee under the FMLA.

147.    Ms. Nickerson suffered from one or more serious health conditions for which she received continuing medical care, including, but not limited to, her achalasia, fibromyalgia, chronic pain syndrome, migraine with aura, intervertebral displacement of the lumbar region of her back, and peripheral neuropathy.

148.    Ms. Nickerson was both eligible for and entitled to FMLA leave.

149.    Ms. Nickerson sought to exercise her rights under the FMLA, including by requesting one or more protected leaves under the FMLA; and/or requesting information regarding her eligibility and/or entitlement to a protected leave under the FMLA; and/or informing her employer of the likelihood that she would be requesting a protected leave under the FMLA in the future; and/or utilizing FMLA leave.

150.    Ms. Nickerson timely notified the Defendants that she would need FMLA leave.

151.    The Defendants interfered with, restrained, and/or denied the exercise of, or the attempted exercise of, Ms. Nickerson's rights under the FMLA, more specifically, by criticizing Ms. Nickerson for utilizing FMLA leave for which she was qualified and eligible for in a manner that constituted a constructive denial and terminating her with the seeming purpose of preventing her from utilizing the FMLA leave for her November 6, 2019 surgery and recovery period after that surgery.

152.    The Defendants, including by and through their agents, retaliated and/or discriminated against Ms. Nickerson for requesting and/or utilizing FMLA leave by subjecting Ms. Nickerson to adverse actions, including, but not limited to, subjecting Ms. Nickerson to a harassing and otherwise hostile work environment, holding her to a higher standard than non-

disabled employees, taking away her job duties, and/or terminating Ms. Nickerson's employment.

153.    Mr. Mahoney was an employer under the FMLA because he had the power to hire and/or fire Ms. Nickerson, supervised and controlled Ms. Nickerson's conditions of employment including her work schedule, played a role in determining Ms. Nickerson's rate and method of payment, and/or played a role in maintaining Ms. Nickerson's employment records.

154.    Mr. Mahoney, in his capacity as an employer, retaliated against Ms. Nickerson for engaging in activities protected under the FMLA.

155.    The Defendants' actions were willful and undertaken in bad faith.

156.    As a direct and proximate result of the Defendants' violation of the FMLA, Ms. Nickerson has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, other monetary harms, loss of earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

157.    Ms. Nickerson seeks all damages to which she is entitled, including, but not limited to lost compensation and benefits (including, but not limited to, back pay and front pay), other monetary damages, compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), injury to reputation, diminished earning capacity, liquidated (i.e. double) damages, interest, attorney's fees, and costs.

## COUNT IV

### (Retaliation in Violation of the New York State Human Rights Law, Executive Article 15, Section 296)

### Ms. Nickerson v. All Defendants

158.    Ms. Nickerson incorporates all paragraphs above and below as if set forth fully herein.

159.    Ms. Nickerson engaged in protected activity under the New York State Human Rights Law, including, but not limited to, (i) opposing, voicing protected concerns, and/or engaging in other protected activity related to the harassing and discriminatory actions taken by the Company (and Company employees) due to Ms. Nickerson's disabilities; (ii) requesting and/or utilizing reasonable accommodations for disabilities which were intended to allow Ms. Nickerson to perform the essential functions of her job; and/or (iii) opposing, voicing protected concerns, and/or engaging in other protected activity related to the failure of the Company to provide disability-related reasonable accommodations and/or the failure of the Company to engage in an interactive dialogue related to Ms. Nickerson's disabilities and requested accommodations (i.e., denying Ms. Nickerson the use of a higher desk and chair, and by criticizing Ms. Nickerson for requesting and/or utilizing reasonable accommodations for her disabilities in a manner that constituted a constructive denial and terminating her before she could utilize the reasonable accommodation of a disability-related temporary leave of absence and to work from home following her November 6, 2019 surgery).

160.    The disability-related accommodation requests which the Defendants retaliated against Ms. Nickerson for requesting included, but were not limited to, being allowed to use a higher desk and chair, periodically working from home, limited leaves of absence to attend and recover from surgery, being allowed to work from home for an approximately 2-week recovery

period after her November 2019 surgery, and taking disability-related leave for recovery from flare-ups of her disabilities' symptoms.

161.    The Defendants unlawfully coerced, intimidated, threatened, and/or interfered with Ms. Nickerson's exercising of or enjoyment of rights granted by the New York State Human Rights Law.

162.    More specifically, the Defendants subjected Ms. Nickerson to adverse actions, including, but not limited to, subjecting Ms. Nickerson to a harassing and otherwise hostile work environment, holding her to a higher standard than non-disabled employees, taking away her job duties, and/or terminating Ms. Nickerson's employment.

163.    Upon information and belief, Mr. Mahoney was involved in the decision to terminate Ms. Nickerson.

164.    Mr. Mahoney discharged, expelled, barred, and/or discriminated against Ms. Nickerson in her compensation, conditions, and/or privileges of employment based on rights afforded to Ms. Nickerson under the New York State Human Rights Law.

165.    Mr. Mahoney aided, abetted, incited, coerced, and/or compelled the Company's discriminatory conduct, including, but not limited to, by providing or attempting to provide assistance to individuals participating in conduct forbidden under the New York State Human Rights Law.

166.    The Defendants' actions were willful, wanton, reckless, and/or involved a conscious disregard of the rights of Ms. Nickerson and/or conduct so reckless to amount to such disregard.

167.    As a direct and proximate result of the Defendants' violation of the New York State Human Rights Law, Ms. Nickerson has suffered and continues to suffer damages,

including, but not limited to, lost compensation and benefits, other monetary harms, loss of earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

168.    Ms. Nickerson seeks all damages to which she is entitled, including, but not limited to, lost compensation and benefits (including back pay and front pay), lost benefits, reduced earning capacity, other financial damages, emotional distress damages, uncapped compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), injury to reputation, punitive damages,  interest, attorney's fees, and costs.

## COUNT V

**(Retaliation in Violation of the Americans with Disabilities Act, 42 U.S.C. §§12101, et seq.)**

**Ms. Nickerson v. The Company**

169.    Ms. Nickerson incorporates all paragraphs above and below as if set forth fully herein.

170.    Ms. Nickerson engaged in protected activity under the ADA, including, but not limited to: (i) opposing, voicing protected concerns, and/or engaging in other protected activity related to the harassing and discriminatory actions taken by the Company due to Ms. Nickerson's disabilities; (ii) requesting reasonable accommodations for disabilities which were intended to allow Ms. Nickerson to perform the essential functions of her job; and/or (iii) opposing, voicing protected concerns, and/or engaging in other protected activity related to the failure of the Company to provide disability-related reasonable accommodations and/or the failure of the Company to engage in an interactive dialogue related to Ms. Nickerson's disabilities and requested accommodations (i.e., by criticizing Ms. Nickerson for utilizing reasonable accommodations for her disabilities in a manner that constituted a constructive denial and

terminating her before she could utilize the reasonable accommodation of a disability-related temporary leave of absence and to work from home following her November 6, 2019 surgery).

171.    The disability-related accommodation requests which the Company retaliated against Ms. Nickerson for requesting included, but were not limited to, being allowed to use a higher desk and chair, periodically working from home, limited leaves of absence to attend and recover from surgery, being allowed to work from home for an approximately 2-week recovery period after her November 2019 surgery, and taking disability-related leave for recovery from flare-ups of her disabilities' symptoms.

172.    The Company unlawfully coerced, intimidated, threatened, and/or interfered with Ms. Nickerson's exercising of, or enjoyment of, one or more rights granted by the ADA.

173.    More specifically, the Company subjected Ms. Nickerson to adverse actions, including, but not limited to, subjecting Ms. Nickerson to a harassing and otherwise hostile work environment, holding her to a higher standard than non-disabled employees, taking away her job duties, and/or terminating Ms. Nickerson's employment.

174.    The Company acted with malice and/or with reckless indifference to the federally protected rights of Ms. Nickerson.

175.    As a direct and proximate result of the Company's violation of the ADA, Ms. Nickerson has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, loss of earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

176.    Ms. Nickerson seeks all damages to which she is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), other monetary damages, compensatory damages (including, but not limited to, future pecuniary

losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), injury to reputation, diminished earning capacity, punitive damages, interest, attorney's fees, and costs.

WHEREFORE, the plaintiff, Kathy Nickerson, respectfully requests that this honorable court:

A.  Schedule this matter for trial by jury, and;

B.  Find the Defendants liable on all counts;

C.  Award the Plaintiff damages related to lost compensation and benefits, including, but not limited to, back pay and front pay;

D.  Award the Plaintiff other monetary damages;

E.  Award the Plaintiff damages for emotional distress;

F.  Award the Plaintiff compensatory damages, including, but not limited to, for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish and, loss of enjoyment of life;

G.  Award the Plaintiff damages for harm to reputation and reduced earning capacity;

H.  Award the Plaintiff liquidated (i.e. double) damages;

I.  Award the Plaintiff punitive damages;

J.  Award the Plaintiff her reasonable attorney's fees;

K.  Award the Plaintiff interest and costs;

L.  Award the Plaintiff all other damages to which she is entitled; and

M. Grant such further relief as is just and equitable.

Respectfully Submitted,

Kathy Nickerson

By her attorneys,

THE LAW OFFICES OF WYATT & ASSOCIATES P.L.L.C

Date:  January 13, 2021                    By:    */s/Rachael De Orio*
                                                   Benjamin J. Wyatt, NY Bar # 5604590
                                                   BWyatt@Wyattlegalservices.com

                                                   Timothy J. Brock, NY Bar # 5614151
                                                   TBrock@Wyattlegalservices.com

                                                   Rachael E. De Orio, NY Bar #5824677
                                                   Rachael@Wyattlegalservices.com

                                                   The Law Offices of Wyatt & Associates, P.L.L.C.
                                                   17 Elm Street, Suite C211
                                                   Keene, NH 03431
                                                   Telephone: (603) 357-1112
                                                   Facsimile: (603) 685-2868

                                                   New York Office:
                                                   418 Broadway, 2nd Floor
                                                   Albany, NY 12207